In the Matter of an INVESTIGATION INTO INTRA–LATA EQUAL ACCESS AND PRESUBSCRIPTION.

CONTEL OF MINNESOTA, INC., d/b/a GTE Minnesota, et. al., Relators,

v.

MINNESOTA PUBLIC UTILITIES COMMISSION, Respondent.

Nos. C1–94–2429, C4–94–2439.

Court of Appeals of Minnesota.

June 6, 1995.

David G. Seykora, William M. Ojile, Jr., Richard L. Johnson, U.S. West Communications, Inc., Minneapolis, and Melvin B. Goldberg, St. Paul, for relator U.S. West Communications, Inc.

Charles Hoffman, Maslon, Edelman, Borman & Brand, Minneapolis, and William D. Kolb, James C. Stroo, Wentzville, MO, for relator Contel of Minn., Inc. and GTE, Minn.

Hubert H. Humphrey, III, Atty. Gen., Margaret E. Hendriksen, Asst. Atty. Gen., St. Paul, for respondent Minn. Public Utilities Com'n.

John B. Van De North, Jr., Mark J. Ayotte, Briggs and Morgan, St. Paul, Larry Salustro, AT & T Legal Dept., Chicago, IL, for intervenor-respondent AT & T Communications of the Midwest, Inc.

Amy Klobuchar, Gregory Merz, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Edward Washington, II, Chicago, IL, for intervenor-respondent MCI Communications Corp.

Considered and decided by SHORT, P.J., and HUSPENI and JONES,* JJ.

## OPINION

SHORT, Judge.

In this consolidated appeal, relators US West Communications, Inc. ("US West") and Contel of Minnesota, Inc. d/b/a GTE Minnesota et al. ("GTE") seek review of an order that establishes guidelines for implementing intra-LATA equal access presubscription in Minnesota. The Minnesota Public Utilities Commission (Commission) moves for dismissal and alleges the issues now raised by US West and GTE were decided in prior unappealed orders. MCI Telecommunications Corporation (MCI) and AT & T Communications of the Midwest, Inc. (AT & T) intervene as respondents.

## FACTS

This action is a fallout of the antitrust lawsuit filed by the United States Department of Justice against the Bell Telephone Company system. *United States v. American Tel. & Tel. Co.*, 552 F.Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). In that case and subsequent cases, including *United States v. Western Elec. Co., Inc.*, 569 F.Supp. 990 (D.D.C. 1983) and *United States v. Western Elec. Co., Inc.*, 569 F.Supp. 1057 (D.D.C.1983), *aff'd sub nom. New York State Dep't of Pub. Serv. v. United States*, 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983), the trial court approved a consent decree and ordered: (1) divestiture of AT & T's local operating companies to prevent anticompetitive behavior; (2) reorganization of local Regional Bell Op-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

erating Companies (RBOCs), which were given local exchange monopolies and short-haul toll service in proximity to those local exchanges; (3) division of the country into geographic service areas called local access and transport areas (LATAs); (4) maintenance by AT & T of inter-LATA exchange service; (5) prohibition against RBOCs entering the inter-LATA business; and (6) inter-LATA equal access presubscription.

US West is an RBOC and provides telephone service in several states, including Minnesota. GTE provides local telephone service to 116 mostly rural Minnesota exchanges. While GTE is not an RBOC, its operating companies are subject to the same inter-LATA restrictions imposed on US West. *United States v. GTE Corp.*, 603 F.Supp. 730, 732–33 (D.D.C.1984).

There are five LATAs in Minnesota. Inter–LATA service is long-distance toll service across LATA boundaries; Intra–LATA service is service within a LATA, including both local telephone service and short-haul long distance toll service. While the federal courts prohibited the RBOCs and GTE from providing inter-LATA service, the courts left regulation of intra-LATA service to the states. *Western Electric Co., Inc.*, 569 F.Supp. at 1109. Forty-five states have or are in the process of authorizing intra-LATA competition. *Petition of MCI Telecommunications*, 263 N.J.Super. 313, 622 A.2d 1314, 1316 (A.D.1993).

Initially, in Minnesota, US West (then Northwestern Bell Telephone Company) was the sole authorized provider of intra-LATA toll service. In 1984, AT & T and other long distance carriers requested intra-LATA service authority. The Commission consolidated those requests with other service issues in Docket 212. After a contested case hearing, in which US West and GTE participated, the Commission found "competition in the intra-LATA market as well as the inter-LATA market is in the public interest," and authorized AT & T and other long distance carriers to compete in Minnesota's intra-LATA market. After that decision, subscribers could reach AT & T (inter-LATA) and US West (intra-LATA) by dialing one or zero plus the telephone number and could reach other carriers by dialing an access code plus the telephone number. There was no appeal from the order in Docket 212.

In 1985, the Commission again considered the intra-LATA competition issue in Docket 582. In the hearing notice, the Commission asked whether intra-LATA equal access presubscription should be required by a certain date, whether and how exceptions could be allowed, and how upgrade costs should be recovered. After a contested case hearing, in which US West and GTE participated, the Commission found US West, as the sole one plus toll carrier, held virtually all of the intra-LATA toll service. In Docket 582, the Commission ordered that intra-LATA equal access presubscription was necessary so the subscriber could reach a preselected intra-LATA long distance carrier by dialing only the prefix one or zero plus the telephone number. Although the Commission concluded equal access presubscription was necessary for effective competition, it recognized two problems:

> First, the technology has yet to be developed which would allow for the provision of intra-LATA equal access presubscription at a reasonable cost. * * * Second, a method to pay for the development and installation of intra-LATA equal access presubscription has not been established by this Commission.

To address these issues, the Commission initiated a study committee in Docket 697. However, the Commission cautioned:

> [T]his study group will not address the policy of whether equal access presubscription should be provided, but rather should address itself to how the technical and economic barriers to equal access can be overcome.

In denying reconsideration of its order in Docket 582, the Commission specifically: (1) denied US West's request to reserve decision on intra-LATA equal access presubscription until completion of Docket 697; and (2) said that it would not revisit whether equal access presubscription was required. No one appealed from that order.

In 1987, the RBOCs asked a federal court to lift all restrictions on their provision of

inter-LATA toll service. Finding that the RBOCs' exchange monopoly still existed and that competitors were still disadvantaged, the federal court denied the request to lift the prohibition against inter-LATA service. *United States v. Western Electric Co., Inc.,* 673 F.Supp. 525, 538 (D.D.C.1987), *aff'd in part, rev'd in part,* 900 F.2d 283 (D.C.Cir. 1990), and *cert. denied,* 498 U.S. 911, 111 S.Ct. 283, 112 L.Ed.2d 238 (1990). In addition, the RBOCs have lobbied for legislation to lift the restrictions on inter-LATA competition, or at least, to preclude states from requiring dialing parity prior to inter-LATA relief. *See, e.g.,* Telecommunications Competition and Deregulation Act of 1995, S. 652, 108th Cong., 1st Sess. (1995); Brooks–Dingell Bill, H.R. 3626, 103rd Cong., 2d Sess. (1993). To date, such legislation has not been enacted.

The investigation in Docket 697 took almost two years. The study committee conducting the investigation included representatives from US West and GTE. US West requested an expedited hearing or, in the alternative, a contested case, to determine whether the implementation of intra-LATA equal access presubscription was in the public interest. The Commission denied US West's request, concluding it had previously decided intra-LATA equal access presubscription service was in the public interest and should be implemented. In July 1994, the Commission issued an order in Docket 697 which established guidelines for implementing intra-LATA equal access presubscription. The Commission denied US West's petition for reconsideration. Both US West and GTE petitioned for review by writ of certiorari.

### ISSUES

I. Should this appeal be dismissed because it raises issues which were decided in prior appealable orders?

II. Did the Commission abuse its discretion or otherwise act unfairly by failing to engage in rulemaking prior to issuing its guidelines?

III. Did the Commission engage in unlawful procedure when it issued orders in Docket 697 without holding a contested case hearing?

### ANALYSIS

On writ of certiorari, we determine whether the Commission violated the constitution, exceeded its authority, engaged in unlawful procedure, erred as a matter of law, issued a decision unsupported by substantial evidence, or acted arbitrarily or capriciously. Minn.Stat. § 14.69 (1992). We defer to the agency's expertise in fact finding, and will affirm the agency's decision if it is lawful and reasonable. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824–26 (Minn.1977); *see Mammenga v. State, Dep't of Human Servs.,* 442 N.W.2d 786, 789 (Minn.1989) (an agency's decision is presumed to be correct). When reviewing questions of law, however, we are not bound by the agency's decision and need not defer to the agency's expertise. *No Power Line, Inc. v. Minnesota Envtl. Quality Council,* 262 N.W.2d 312, 320 (Minn. 1977); *cf. St. Otto's Home v. Minnesota Dep't of Human Servs.,* 437 N.W.2d 35, 40 (Minn. 1989) (considerable deference is given to agency's interpretation of its own regulations). An agency decision is arbitrary and capricious when it represents the agency's will and not its judgment. *Markwardt v. State, Water Resources Bd.,* 254 N.W.2d 371, 374 (Minn.1977). We are asked to decide whether the Commission violated the constitution, exceeded its authority, engaged in unlawful procedures, or acted arbitrarily when it issued the orders in Docket 697.

### I.

A party may appeal a final agency decision by writ of certiorari. Minn.Stat. § 14.63 (1992), § 237.25 (1992); Minn.R.Civ. App.P. 115.01 (procedure for writ of certiorari). Agency action is final and reviewable when the agency completes its decisionmaking process and the result of that process directly affects a party. Administrative Procedure Act § 10(c), 5 U.S.C. § 704 (1988); *Franklin v. Massachusetts,* —— U.S. ——, ——, 112 S.Ct. 2767, 2773, 120 L.Ed.2d 636 (1992); *see Abbott Laboratories v. Gardener,* 387 U.S. 136, 148–51, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967) (setting forth indicia to

determine if agency action is final). We will not review an interim agency order where issues are not fully determined or become entangled in internal agency proceedings which are far from complete. *See, e.g., In re Development of Regulations for Implementation of Telecommunications Technology Investment Act,* 1994 W.L. 679995 at *4 (Del.Super.1994) (declining to decide issue because agency action not final); *In re Complaint Regarding Annexation of Serv. Territory of Peoples' Coop. Power Ass'n,* 430 N.W.2d 879, 881 (Minn.App.1988) (agency decision not appealable until final); *see also* George A. Beck, et al., *Minnesota Administrative Procedure* § 13.2 at 248 (1987) (jurisdiction to review agency decision will not be exercised if decision is not final). If no appeal is taken from a final order, however, the agency decision is conclusive. Minn.Stat. § 237.26 (1992).

■ The Commission and intervenors move to dismiss this appeal on the grounds that the issues were decided by the prior unappealed orders in Dockets 212 and 582. US West and GTE argue the earlier orders have no relevance because they are challenging only the procedures used by the Commission in Docket 697.

The Commission's order in Docket 212 ended US West's monopoly in the intra-LATA toll service market. The decision that the intra-LATA market should be open to competition was codified in Minn.Stat. § 237.59, subd. 1(11–13) (1992), and is not properly before us on review.

■ In Docket 582, the Commission concluded intra-LATA toll competition cannot be realized without requiring local exchange companies to install facilities that permit choice by subscribers and equal access to a chosen carrier by dialing one or zero plus the long distance number. The Commission did not order immediate implementation of equal access presubscription, but ordered a study committee to investigate: (1) when necessary software would be available; and (2) how implementation costs should be recovered. US West admits the Commission acted appropriately in convening Docket 697. However, US West and GTE argue there was no final appealable order in Docket 582 because questions of implementation remained pending completion of Docket 697. That argument is contrary to the record.

US West petitioned for reconsideration of the order in Docket 582, and specifically asked the Commission to defer its decision on all intra-LATA equal access issues, including whether to require equal access presubscription at all, until the Docket 697 study committee completed its work. In its Docket 582 order after reconsideration, the Commission expressly stated it would not change its decision that equal access must be provided. Thus, in Docket 582, the Commission completed its decision-making process on whether to require equal access presubscription. The result of the contested case proceedings in that docket directly and adversely affected US West and GTE, even if implementation of equal access presubscription would occur later. Because no appeal was taken from the Docket 582 order denying reconsideration, the Commission's decision to require equal access presubscription was final and conclusive. We therefore decline to consider that issue. *See* Minn.Stat. § 237.26 (if no appeal is taken, Commission order becomes final and conclusive). We deny the motion to dismiss because the narrow issue of whether the Commission engaged in lawful procedures when it determined the "when" and "how" of implementing equal access presubscription in Docket 697 is properly before us.

## II.

■ Administrative policy may be formulated by promulgating rules or on a case-by-case basis. *Bunge Corp. v. Commissioner of Revenue,* 305 N.W.2d 779, 785 (Minn. 1981). A rule includes every agency statement which has general applicability and future effect. Minn.Stat. § 14.02 (1992). Important questions of social or political policy are more appropriately promulgated as rules, while the application of specific facts to specific parties is more appropriate within an adjudicatory-type setting. *McKee v. Likins,* 261 N.W.2d 566, 577–78 (Minn.1977); *In re Hibbing Taconite Co.,* 431 N.W.2d 885, 894 (Minn.App.1988); *see* George A. Beck, et al., *Minnesota Administrative Procedure* at

§ 16.6 at 316–20 (comparing rulemaking with policymaking by adjudication).

Not every principle can or should be cast immediately into the mold of a rule because some principles must be adjusted to meet particular situations. *Securities & Exc. Comm'n v. Chenery*, 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). Whether to proceed by rulemaking or adjudication is a decision left to the informed discretion of the agency. *Id.; see Bunge Corp.*, 305 N.W.2d at 785 (agency has discretion to choose between rulemaking and adjudication); *In re Northwestern Bell Tel. Co.*, 371 N.W.2d 563, 567–68 (Minn.App.1985) (same), *pet. for rev. denied* (Minn. Sept. 26, 1985). An agency may choose to forego rulemaking because: (1) notice and comment procedure alone will be inadequate to permit the agency to understand all the important implications of a rule; (2) the decision is too closely imbedded in the particular facts to be stated in a general rule; (3) the agency may have insufficient experience with a particular problem; or (4) the problem is "so specialized and varying in nature as to be impossible to capture within the boundaries of a general rule." *Chenery*, 332 U.S. at 202, 203, 67 S.Ct. at 1580; Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law Treatise*, § 6.8 at 267 (3rd ed. 1994). Courts are poorly situated to distinguish between circumstances appropriate for rulemaking and circumstances appropriate for case-by-case decisionmaking. Davis, § 6.8 at 267. An agency with expertise in a particular area has an enormous advantage over a reviewing court in making this complicated judgment. *Id.* at 268.

US West argues the Commission exceeded its authority and engaged in unlawful procedures by failing to use rulemaking procedures prior to implementation of equal access presubscription. *See Ford Motor Co. v. Federal Trade Comm'n*, 673 F.2d 1008, 1010 (9th Cir.1981), *cert. denied*, 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 394 (1982) (it was unfair for the FTC to alter rule with widespread application by adjudication rather than rulemaking procedure). The Commission contends rulemaking is not appropriate for implementation of equal access presubscription. The record demonstrates: (1) all affected parties were notified and participated in the contested case proceedings in Dockets 212 and 582, and were represented on the study committee in Docket 697; (2) the affected parties filed written comments in all proceedings; (3) the Commission rejected some of the study committee's recommendations regarding cost recovery and adopted positions more favorable to US West; (4) software and hardware installation and development of appropriate per-minute-of-use cost recovery charges will be different for every local exchange carrier; (5) implementation of intra-LATA equal access presubscription is a one-time event; and (6) earlier agency decisions on intrastate inter-LATA equal access presubscription and Minnesota Independent Equal Access Corporation centralized equal access were implemented without rulemaking.

In detailed orders, the Commission concluded all affected parties had an opportunity to be heard and uniform rules would not be helpful. After a careful review of the record, we conclude that the legitimacy of the Commission's decision was assured by the openness and democracy of the process. *See Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1027–28 (D.C.Cir.1978) (if agency infuses process with openness, explanation, and participatory democracy, the danger of arbitrariness and irrationality in rulemaking is negated). We cannot say that the process used by the agency to implement equal access presubscription was unfair or that the Commission abused its discretion by declining to conduct rulemaking procedures. Under these circumstances, the Commission did not exceed its authority or engage in unlawful procedure.

### III.

The Commission is authorized by statute to initiate summary investigations and to issue orders to telephone companies on any matter relating to telephone service. Minn.Stat. § 237.081 (1992). After conducting an investigation, the Commission must order a contested case hearing under chapter 14 if it finds that significant factual issues have not been satisfactorily resolved. *Id.*

When no material issues of fact exist, a contested case is unnecessary. *Id.; Costle v. Pacific Legal Found.,* 445 U.S. 198, 214, 100 S.Ct. 1095, 1105, 63 L.Ed.2d 329 (1980); *Jones v. Minnesota State Bd. of Health,* 301 Minn. 481, 483–84, 221 N.W.2d 132, 134–35 (1974).

 In the absence of rulemaking proceedings, US West and GTE argue the investigation in Docket 697 should have proceeded to a contested case hearing. *See In re Implementation of Utility Energy Conservation Improvement Programs,* 368 N.W.2d 308, 312 (Minn.App.1985) (contested case hearing must be allowed when required by statute or constitution). Specifically, US West and GTE argue a contested case hearing is required to address whether intra-LATA equal access presubscription is in the public interest and whether the costs outweigh the benefits. That issue was fully litigated, however, in the contested case hearings held in Dockets 212 and 582. Following those hearings, in which US West and GTE participated, the Commission concluded competition in the intra-LATA market was in the public interest and equal access presubscription was required for effective competition. Because US West and GTE did not seek review of those decisions, there is no legal requirement or need for an additional contested case hearing on the same issues.

US West and GTE also argue a contested case hearing is necessary to resolve whether financial and/or competitive harm will result from equal access presubscription. However, the Commission found: (1) allegations of potential harm are speculative; (2) there is no factual dispute regarding financial harm; and (3) any future financial harm caused by equal access presubscription can be alleviated by US West or GTE filing a petition for a rate increase. Minn.Stat. § 237.075 (1992) (telephone companies may change rates upon petition to Commission). These findings are supported by substantial evidence and are not arbitrary and capricious. *See* Minn.Stat. § 14.69(e), (f) (courts will reverse findings when they are not supported in the record or are arbitrary and capricious).

Finally, US West and GTE argue a contested case hearing is required to "flesh out the necessary exchange of concessions" for successful implementation of intra-LATA competition and to resolve the technical and economic barriers to equal access. The Commission and the intervenors suggest this argument is a ruse to delay implementation of intra-LATA competition until the Congress undoes the ban against RBOCs' participation in inter-LATA competition. *Compare* Telecommunications Competition and Deregulating Act of 1995, S. 652, 104th Cong., 1st Sess. (1995) (allowing RBOCs to compete in inter- and intra-LATA service) *with* 1995 Minn.Laws. ch. 156, § 1 (requiring RBOCs to compete in intra-LATA service). It is odd that parties so critical of courts "meddling" in the "technical" telecommunications industry urge us to overlook the Commission's role in regulating the delivery of telephone services under a veiled threat of adverse impact on the public.

A review of the record shows all facts relating to US West's and GTE's "inter-LATA handicap" were presented at the contested case hearings in Dockets 212 and 582. *Cf. Petition of MCI Telecommunications,* 263 N.J.Super. 313, 622 A.2d 1314, 1318–19 (A.D.1993) (reversing agency decision because no evidence of reasoned decision-making where petition was dismissed three weeks after filing, before discovery was conducted, and without argument or hearing). Significantly, neither US West nor GTE raise specific issues of fact regarding the cost recovery mechanisms adopted by the Commission in Docket 697. Under these circumstances, US West and GTE have failed to raise a material fact dispute necessitating a contested case hearing under Docket 697.

 In addition, the Commission's denial of yet another evidentiary hearing is not a denial of due process given the protracted history of this dispute. *See Juster Bros. v. Christgau,* 214 Minn. 108, 119, 7 N.W.2d 501, 508 (1943) (due process requires adequate notice and a fair hearing); *Petition of Peoples Natural Gas Co.,* 358 N.W.2d 684, 690 (Minn.App.1984) (refusal to conduct hearing not a denial of due process), *aff'd,* 389 N.W.2d 903 (Minn.1986). We conclude the Commission did not violate the constitution, exceed its authority, engage in unlawful pro-

cedures, or act arbitrarily in the Docket 697 proceedings and decision.

## DECISION

First, the Commission completed its decisionmaking process on whether to require equal access presubscription in Docket 582 even though implementation issues remained unresolved. Second, the issue properly before us is whether the Commission engaged in lawful procedures when it used a study committee instead of rulemaking procedures or a contested case hearing to establish implementation guidelines. We cannot say that the implementation process for equal access presubscription was unfair to US West and GTE, or that the Commission abused its discretion by declining to conduct rulemaking procedures. And third, US West and GTE failed to cite any material facts that require another contested case hearing.

**Affirmed. Motion to dismiss denied.**